In the Matter of the Probate of a Paper Propounded to Be the Last Will and Testament of JOHANNA TEHAN, Also Known as JOHANNA TAHEN, Deceased.

EDWARD BURNS and Others, Appellants; HUGH J. McNALLY, Respondent.

First Department, July 6, 1926.

**Wills — execution — evidence supports verdict that will was not duly executed.**

The verdict of the jury that the alleged will offered for probate was not duly executed, is supported by the evidence, since it appears that the paper was

executed while the testatrix was in the hospital suffering from pneumonia from which she died a few days after the execution of the will, and that the testimony of the doctor in charge was to the effect that at no time while the testatrix was in the hospital was she able to carry on a conversation, and that during most of the time she was delirious.

Appeal by Edward Burns and others from an order of the Surrogate's Court of the county of New York, entered in the office of said Surrogate's Court on the 12th day of August, 1925, setting aside the verdict of a jury in their favor and ordering a new trial, and also from an order entered in the office of said Surrogate's Court on the 19th day of October, 1925, denying appellants' motion for a general verdict refusing probate.

*William A. Hyman* of counsel [*Ralph F. Kane* with him on the brief], for the appellants.

*Denis O. L. Cohalan* of counsel [*Cohalan & Cohalan*, attorneys], for the respondent.

Martin, J. We believe that the jury's verdict, so far as it implied absence of the statutory requirements in the execution of the will, should not be disturbed. While there was evidence from which the jury might have found due execution, particularly that of the subscribing witnesses, there was evidence fairly tending to establish that the will could not have been duly executed.

The decedent was over seventy years of age. She had been living in a rooming house on Third avenue, in the city of New York, where she contracted pneumonia, necessitating her removal after several days illness to a hospital, in which she died a few days later.

The doctor in charge of the hospital ward, who attended decedent, says he saw her several times a day during that period. He testified that she was very deaf and suffering from a bad attack of pneumonia when she entered the hospital; that she kept getting worse; that he shouted at her at times to attract her attention, but she did not look in the direction he was standing; that at times she muttered, and that was all she could do. He also testified that decedent was delirious from the time she entered the hospital until she died, and that during the several days so intervening she was never able to utter a connected sentence. His testimony indicated that she was unable to execute a will at any time after she entered the hospital.

He further testified: " At times she lay in bed, sleeping a greater part of the time, at other times she lay there muttering, sometimes throwing her bed clothes off. She required constant observation by a nurse so that she would not fall out of bed. * * *

The first evening I saw her I tried to elicit how long she had been ill. No history was obtained on her the night she came in and she was unable to answer me."

He says he saw the patient the day the will was executed; and that he believed she was worse on that day than previously, and, upon looking at the chart, he said he had a very good reason for that belief; that the chart refreshed his recollection.

The two principal witnesses whose testimony was offered in support of the will admitted that they did not read the will to decedent. They say that they conversed freely with her in an ordinary tone of voice and did not notice any impairment of her hearing. They further testified that the decedent read the will before she signed it. Several witnesses for the contestants testified that the decedent had been very deaf for a number of years and one witness testified that she had never been able to read or write.

The conflict in the testimony was resolved by the jury against due execution.

We are of the opinion that the testimony supports the verdict, and that it should not have been set aside and a new trial ordered.

The order setting aside the findings of the jury should be reversed, with costs to the appellants, and the verdict reinstated. The order denying motion for a general verdict should be affirmed, without costs.

CLARKE, P. J., DOWLING, FINCH and McAVOY, JJ., concur.

First order appealed from reversed, with costs of this appeal to the appellants, and the verdict reinstated, and proceeding remitted to the surrogate for further action in accordance with opinion. Second order affirmed, without costs.